IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:05CR102 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| BRIAN P. KILKENNY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant Brian P. Kilkenny's objection, Filing No. 27, to the report and recommendation ("R&R") of the United States Magistrate Judge ("Magistrate"), Filing No. 26, regarding defendant's motion to suppress evidence, Filing No. 15, and motion to suppress statements, Filing No. 16. Defendant is charged with one count of knowingly and intentionally possessing with the intent to distribute more than 100 kilograms but less than 1,000 kilograms of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1). Defendant seeks suppression of evidence found in the search of his vehicle during a traffic stop on February 19, 2005. Specifically, he contends that the stop, search and seizure of his automobile and person violate his rights under the Fourth and Fourteenth Amendments to the United States Constitution. He also asserts that the statements, confessions or admissions made by him on February 19, 2005, should be suppressed under the Fourth, Fifth, and Sixth Amendments to the United States Constitution. The magistrate judge recommended that the defendant's motions be denied.

Pursuant to 28 U.S.C. § 636(b)(1), the court has conducted a de novo determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the entire record including

the transcript of the hearing held on August 26, 2005, Filing No. 24 ("Tr."), and the videotape of the stop, Filing No. 22, and the relevant case law. The court concludes that the magistrate's report and recommendation is adopted in part as hereinafter set forth.

### FACTS

The court generally accepts the facts set out in the R&R and they need not be repeated here, except to the extent necessary to this court's findings. On February 19, 2005, Officer Bill Maddux, while heading westbound, observed a car heading eastbound allegedly trailing too close to a semi-truck in front of it. Officer Maddux turned his patrol vehicle around and caught up with the defendant. Officer Maddux testified that he timed the distance between the two vehicles on his stop-watch and determined that a time of .75 seconds had elapsed. In addition, there existed mist and drizzle conditions. Officer Maddux proceeded to stop the defendant. Officer Maddux exited his patrol vehicle and made contact with the victim, asking for his license, registration and insurance. Officer Maddux then asked the defendant to accompany him to the patrol car. While in the patrol car, Officer Maddux asked the defendant a series of questions regarding his travels. The defendant indicated he had traveled to Texas to see his son, then to Las Vegas for eight hours or so to gamble, and then either back to Texas or to Ohio where he resided.[1]

Officer Maddux told the defendant he would receive a warning for following too closely. He then told the defendant he could leave. However, as the defendant exited the police vehicle, Officer Maddux asked if he could ask the defendant a couple of additional questions. Defendant agreed. Officer Maddux asked if defendant had any drugs, weapons or explosives in his vehicle, and the defendant answered in the negative. Officer

---

[1] The record is not clear on the last portion of defendant's travels.

Maddux then asked if he could search defendant's vehicle. Defendant orally agreed, although he did not sign a consent form. Officer Maddux then told defendant to sit in the car and not to exit the vehicle for the reason that Officer Maddux' dog, located in the back of the car, would "come uncorked" and also for safety reasons.[2] Tr. at 16:11-22. He told defendant to roll down the window or honk the horn if he needed anything. Officer Maddux proceeded to look inside of defendant's vehicle. He then returned and asked defendant if he could have the keys. Tr. 17:6-16. Defendant handed Officer Maddux the keys. Officer Maddux opened up the trunk and found multiple large bundles of marijuana. He then returned to his vehicle, arrested defendant, placed him in handcuffs and read him his *Miranda* rights. Officer Maddux called for backup, finalized his investigation, and then proceeded to the jail to book the defendant. Defendant received additional *Miranda* warnings at the jail.

Defendant filed a motion to suppress arguing that (1) the police officer had no probable cause for the stop; (2) the continued contact and the search of the vehicle was not consensual; and (3) his statements should be suppressed.

## DISCUSSION

### *The Stop*

The magistrate determined that following a vehicle too closely violates Neb. Rev. Stat. § 60-6,140(1), which states that a driver of a vehicle shall not follow another vehicle more closely than is reasonably prudent, having regard for speed, traffic, and road conditions. The magistrate agreed that Officer Maddux' determination that the two-second

---

[2] It should be noted that Officer Maddux' dog barked during much of the questioning and at times while defendant waited alone in the patrol car for Officer Maddux to return.

rule violation in conjunction with the then existing weather conditions justified a finding of probable cause to stop the defendant for traveling too closely to the vehicle in front. Defendant objects to the findings of the magistrate arguing that no probable cause existed to justify the stop in the first instance.

The Eighth Circuit has held on numerous occasions that even a minor traffic violation, regardless of the perceived severity, is enough to establish probable cause sufficient to permit a police officer to stop the driver of a vehicle. *United States v. Mallari*, 334 F.3d 765, 766-67 (8th Cir. 2003); *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). The court must focus on whether Officer Maddux had "a reasonable basis for believing that the driver has breached a traffic law. Under this objective test, so long as police have probable cause to believe that a traffic violation has occurred, the stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." *United Sates v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996). The court agrees that the weather conditions coupled with Officer Maddux' belief that the defendant traveled too close to the truck based on his personal observation and his attempted stopwatch timing constituted probable cause to make the traffic stop.[3] Consequently, the court concludes that probable cause existed to stop the defendant.

### *The Detention and Consent to Search Vehicle*

The Eighth Circuit has held that a reasonable traffic stop includes (1) asking for license and registration, (2) asking the driver to sit in the patrol car, and (3) asking

---

[3] However, the court is concerned with the accuracy of the two-second rule, particularly in this case. Officer Maddux evidently attempted to time the truck and then defendant's vehicle while traveling in the passing lane 50 to 100 feet behind defendant's vehicle. This required that Officer Maddux watch the road, his car, the truck, the check point and defendant's vehicle. This is unlike a case where one officer suspects a vehicle is following too closely and calls another officer to use a stopwatch as the vehicles pass by to determine the separation between the vehicles, see *United States v. Perez*, 200 F.3d 576, 577 (8th Cir. 2000), or where the rear vehicle is up against the bumper of the vehicle in front of it, *State of Nebraska v. McGinnis*, 608 N.W.2d 605, 608 (Neb. 2000).

questions concerning destination and purpose of travel. *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994). A failure to adequately answer such routine questions can establish reasonable suspicion to allow an officer to ask further questions and detain a person. *Id.; United States v. Perez*, 200 F.3d 576, 579 (8th Cir. 2000). In this case Officer Maddux asked for defendant's license and registration and asked him to sit in the patrol car. While checking the license and registration, Officer Maddux asked defendant about his travels. Defendant could not identify an address for his son in Texas whom he had been visiting, nor could he identify the name of the hotel where he stayed in Las Vegas. Further, Officer Maddux noticed defendant's luggage in the back seat rather than in the trunk of the car, which Officer Maddux deemed to be suspicious.

Officer Maddux gave defendant a warning ticket and told defendant he could leave. As defendant began to exit, Officer Maddux asked if defendant would answer a few more questions. Defendant answered in the affirmative. The court agrees that at this point the detention has ended and the conversation is consensual. *See United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996). Officer Maddux then asks if defendant had drugs, guns or explosives. The defendant says no, and the officer asks if he can conduct a search. The police audio tape recording shows that defendant consented to talk with Officer Maddux and allowed him to search the car. However, Officer Maddux thereafter told defendant to stay in the vehicle, because otherwise the dog would come "uncorked." Tr. 17:6-12. Officer Maddux also testified that he told the defendant to remain in the vehicle for safety reasons. Tr. at 16:11-22.

The magistrate determined that no seizure occurred. Defendant objects arguing that this is an illegal seizure. The court agrees with the defendant that this is a seizure, but it is not an illegal one. It is clear that when Officer Maddux told defendant to remain in the

5

vehicle, he detained the defendant and the defendant could not leave the vehicle. The court finds that this constitutes a seizure for Fourth Amendment purposes. A reasonable person could easily believe that he could not leave and be on his way. *See Florida v. Bostick*, 501 U.S. 429, 436 (1991) (for encounter to be consensual "a reasonable person would feel free 'to disregard the police and go about his business'" (citations omitted)). However, because the court concludes below that defendant voluntarily consented to the search, Officer Maddux' request that defendant remain in the patrol car during the search is permissible for safety reasons.

Defendant argues that he did not consent to the search of the vehicle. Officer Maddux clearly asked for permission to search defendant's vehicle. The defendant, on the audiotape, responded in the affirmative. The court must look at the totality of the circumstances, including the nature of the accused as well as the details of the interrogation, to determine if he voluntarily consented to the search. *United States v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000). The court finds that defendant verbalized affirmative agreement to permit the search. The court has reviewed the audiotape and finds no threats or coercive behavior. The questioning occurred over a short period of time. No evidence has been submitted that would indicate intoxication, nor had defendant been arrested at that time. Consequently, the court finds that the defendant consented to the search.

### *Statements*

Defendant also argues that the statements he made should be suppressed because he did not receive proper *Miranda* notification prior to his statements at the jail and because of promises of leniency by Officer Maddux. *Miranda v. Arizona*, 384 U.S. 436 (1966). The record shows that defendant received *Miranda* rights both at the scene and

upon reaching the jail, before Officer Maddux began to question him.  Consequently, the court determines that defendant received appropriate and timely *Miranda* rights.

With regard to defendant's argument that he received promises of leniency that induced him to talk, the evidence shows otherwise.  The record reflects that Officer Maddux told defendant he would put in a good word for defendant if he talked.  Officer Maddux testified that he did not at anytime make any promises to the defendant about what the state or federal attorneys would do to him.  He promised only to recommend leniency in return for defendant's cooperation.  Such a promise is insufficient to render a statement involuntary.  *United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th Cir. 2002) (promise of leniency will not necessarily render a confession involuntary).  Accordingly, the court finds that the statements made by the defendant are admissible.

THEREFORE, IT IS ORDERED:

1.  The defendant's motions to suppress, Filing Nos. 15 and 16, are denied;

2.  The defendant's objections, Filing No. 27, are overruled; and

3.  The report and recommendation of the magistrate, Filing No. 26, is accepted and rejected as set forth herein.

DATED this 27th day of October, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge